UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:98-cr-00123-SEB-KPF |
| | ) | |
| JON ANDREW GOETZ, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**Order Denying Motion to Reduce Sentence**

Pending before the Court is Jon Andrew Goetz's motion for compassionate release, dkt. 1, filed pursuant to 18 U.S.C. § 3582(c)(1)A)(i), as amended by § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Mr. Goetz seeks immediate release and to serve the remainder of his sentence on home confinement. For the reasons explained below, Mr. Goetz's motion is **denied**.

**I. Background**

In February 1999, Mr. Goetz pleaded guilty to one count of burglary of a licensed firearm dealer in violation of 18 U.S.C. § 922(g), one count of attempted robbery in violation of 18 U.S.C. § 1951, one count of credit union robbery in violation of 18 U.S.C. § 2113, and two counts of using and carrying a firearm in violation of 18 U.S.C § 924(c). Dkt. 15-3 at ¶¶ 1-2. He received a sentence of 318 months' imprisonment and five years' supervised release.

Before Mr. Goetz was sentenced, a presentence investigation report ("PSR") was prepared. Dkt. 15-3. The PSR describes the offense conduct at issue in this case. It states that on June 30, 1998, Mr. Goetz and two others committed a burglary at a gun shop in Bloomington, Indiana, stealing three semi-automatic pistols to be used in further armed robberies. *Id.* at ¶ 4. The next day,

Mr. Goetz and one of the other individuals committed an armed robbery of a Village Pantry in Bloomington, Indiana, using the pistols stolen the day before. Although they demanded money from two employees inside the Village Pantry, the employees did not comply, and Mr. Goetz and the other individual fled the store. *Id.*

On July 23, 1998, Mr. Goetz and three other individuals committed an armed robbery of the Member's Choice Federal Credit Union in Bloomington, Indiana. *Id.* at ¶¶ 5-8. During the course of this armed robbery, they held five individuals hostage and obtained approximately $137,000. Mr. Goetz and the others searched the purses and wallets of the individuals they held hostage and made comments about knowing the names and addresses of these individuals and their families. *Id.* at ¶ 6. After obtaining the money, they stole the vehicle of one of the employees and discarded the two handguns used in the robbery. *Id.* at ¶ 7. After attempting to evade arrest, Mr. Goetz was arrested in Bangor, Maine, on August 17, 1998. *Id.* at ¶ 8.

The PSR shows that Mr. Goetz had no prior juvenile or adult convictions. *Id.* at ¶¶ 53-54. Mr. Goetz also reported no medical or mental health problems. *Id.* at ¶¶ 65-66. He did state that he began using controlled substances at age 13 and routinely consumed alcohol starting at age 16. *Id.* at ¶¶ 67-68.

At the time of Mr. Goetz's sentencing, statutory provisions required consecutive terms of five and 20 years' imprisonment on the two § 924(c) counts. *Id.* at ¶ 76. Based on a total offense level of 24 and a criminal history category of I, his guideline range of imprisonment was 51 to 63 months with consecutive terms of 60 and 240 months. *Id.* at ¶ 77. The Court sentenced Mr. Goetz to 318 month' imprisonment and five years' supervised release.

Mr. Goetz is 41 years old and is now incarcerated at United States Penitentiary Lompoc ("USP-Lompoc") in Lompoc, California. His current release date is projected to be April 30, 2022.

The medical records submitted in response to Mr. Goetz's motion reflect that he tested positive for COVID-19 in May 2020. Dkt. 15-1 at 32. After the positive test result, he received daily screenings for COVID-19 symptoms for approximately two weeks, and he denied all symptoms at every screening. *Id.* at 11-12. In addition, he never developed a fever. *Id.*

In April 2020, Mr. Goetz filed a pro se motion to reduce his sentence asking to serve the remainder of his sentence on home confinement. Dkt. 1. The Court appointed counsel to represent Mr. Goetz, and counsel filed a brief in support of the motion on June 3, 2020. Dkt. 11. The United States responded on June 17, 2020, dkt. 14, and Mr. Goetz filed replies on June 24, 2020, and August 14, 2020, dkts. 20, 24.

## II. Discussion

Mr. Goetz argues that an extraordinary and compelling reason for release to home confinement exists due to changes to the statutory sentencing provisions applicable to his convictions. Additionally, he contends that he should be allowed to serve the rest of his sentence on home confinement because the threat of the COVID-19 pandemic in combination with his treatment for Hepatitis C creates an extraordinary and compelling reason for release. He also argues that consideration of the sentencing factors listed in 18 U.S.C. § 3553(a) favors his release. In response, the United States argues that there are no extraordinary and compelling reasons for Mr. Goetz's release because he tested positive for COVID-19 and was asymptomatic and because this Court has rejected the contention that changes to the statutory sentencing provisions constitute an extraordinary and compelling reason for release. It also asserts that Mr. Goetz is a danger to the community and the sentencing factors do not favor his release.

Mr. Goetz's motion falls within 18 U.S.C. § 3582(c), which provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

3

>appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>**(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Mr. Goetz submitted a request for early release to the acting warden of USP Lompoc in March 2020. Dkt. 1 at 3-4. This request was denied on March 11, 2020. *Id.* at 5. The United States does not contest Mr. Goetz's assertion that he has exhausted his administrative remedies.[1] Accordingly, the merits of the motion are ripe for the Court's consideration.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the Bureau of Prisons ("BOP")) may move for compassionate release,[2]

---

[1] The exhaustion requirement is not jurisdictional and can be waived by the United States. *See United States v. Jackson*, No. 2:15-cr-00013-JMS-CMM-1, dkt. 137 (S.D. Ind. Apr. 28, 2020); *cf. United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (holding that criteria for granting sentence reduction in § 3582(c)(2) are not jurisdictional). Thus, even if Mr. Goetz has not exhausted his administrative remedies, the Court considers the United States' concession to be a waiver of any further exhaustion.

[2] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018,

courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Goetz is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Extraordinary and Compelling Circumstances

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall

---

amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[3] *Id.*, Application Note 1(D).

Mr. Goetz does not suggest that subsections (A) through (C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case. For the reasons explained below, the Court concludes that it does not.

### 1. Changes to Statutory Sentencing Provisions

Mr. Goetz first argues that a sentence reduction based on extraordinary and compelling reasons exists because he would be eligible for a shorter sentence under the amended version of § 924(c). *See* dkt. 11 at 3-4. Section 403 of the First Step Act modified § 924(c)'s stacking provision, eliminating the mandatory stacking except for "a violation of [§ 924(c)] that occurs after

---

[3]The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3[85]2(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Goetz's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

a prior conviction under [§ 924(c)] has become final." First Step Act of 2018, § 403(b), 132 Stat. 5194, 5222.

But Congress expressly declined to make § 403(a)'s amendment retroactive to defendants who were sentenced before the First Step Act was enacted. *Id.* And Congress authorized courts to exercise their discretion to apply other sentencing amendments—but not § 403(a)'s stacking amendment—to otherwise ineligible defendants. *See* First Step Act of 2018, § 404(b), 132 Stat. at 5222 (authorizing courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed"). If Congress intended to authorize courts to exercise discretion to apply § 403 retroactively to otherwise ineligible defendants, it would have included that amendment in § 404(b). Mr. Goetz may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s "extraordinary and compelling" provision as an end-around to achieve a result that Congress did not intend. *See United States v. Fulcher*, 2020 WL 4547970, *1-2 (S.D. Ind. Aug. 5, 2020) (rejecting identical argument); *United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) (rejecting identical argument); *but see United States v. Arey*, --- F. Supp. 3d ----, ----, 2020 WL 2464796, at *4−5 (W.D. Va. May 13, 2020) (collecting cases and holding that "continued incarceration under a sentencing scheme that has since been substantially amended is a permissible 'extraordinary and compelling' reason to consider a reduction in [the defendant's] sentence").

### 2. Risk of COVID-19 and Treatment for Hepatitis C

The COVID-19 pandemic is a serious public health crisis affecting every aspect of society. Nevertheless, most courts have concluded that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raja*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v.*

*Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (same); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."); *see generally United States v. Clark*¸ No. 1:09cr336-1, 2020 WL 1874140 at *8 (M.D.N.C. Apr. 15, 2020).

Here, Mr. Goetz's medical records indicate that he has tested positive for COVID-19. *See* dkt. 15-1 at 32. In determining whether to grant compassionate release to an inmate with COVID-19, district courts consider the inmate's current symptoms and need for urgent treatment as well as the inmate's chronic medical conditions. *Compare United States v. Harris*, CR 88-972-GHK-TSH-9, 2020 WL 3402853 (C.D. Cal. June 16, 2020) (finding an inmate with a chronic autoimmune disease and asymptomatic COVID-19 did not demonstrate an extraordinary and compelling reason for early release); *with United States v. McCall*, No. 2:18-cr-95-MRT, 2020 WL 2992197 (M.D. Ala. June 4, 2020) (granting motion for early release for an inmate with sickle cell anemia and symptomatic COVID-19 that required hospitalization).

Mr. Goetz tested positive for COVID-19 in May 2020 and is yet to develop any signs of illness. It appears that he is part of the large number of individuals who contract COVID-19 but remain asymptomatic. Additionally, his treatment for Hepatitis C appears to have had no impact on his susceptibility to COVID-19.[4] Given these circumstances, Mr. Goetz has failed to demonstrate an extraordinary and compelling reason justifying his early release. *See United States v. Young*, No. 1:10-cr-00003-SEB-DML-17, Dkt. 1540 (S.D. Ind. July 27, 2020) (finding no extraordinary and compelling reason warranting a sentence reduction where defendant with

---

[4] The Court notes that Mr. Goetz's medical records show that he was treated for Hepatitis C and lab results from 2019 did not detect a viral load. Dkt. 15 at 1, 103, and 108.

conditions putting him at statistical risk of developing severe COVID-19 symptoms had contracted the virus but remained asymptomatic).

### B. Danger to the Community

The Court also denies relief to Mr. Goetz on the ground that he has failed to demonstrate that he is not a danger to the community.

Congress has directed the United States Sentencing Commission to "promulgat[e] general policy statements regarding [§ 3582(c)(1)(A)'s] sentencing modification provisions." 28 U.S.C. § 994(t). The Sentencing Commission's policy statement provides, as relevant here, that a court may reduce a sentence if,

> after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that ... [ (1) ] extraordinary and compelling reasons warrant the reduction ...; (2) [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) [t]he reduction is consistent with this policy statement.

U.S.S.G. Manual § 1B1.13.

The Court does not find that Mr. Goetz "is not a danger to the safety of any other person or to the community." *Id.*, § 1B1.13(2). The Court recognizes Mr. Goetz's completion of over 50 educational courses, his service as a mentor to fellow prisoners, and his preparation for re-entry into society. Dkt. 1 at 3-4. But, the Court is also aware of Mr. Goetz's significant disciplinary record, which includes sanctions for exchanging money for contraband, gambling, use of drugs or alcohol, fighting, and possessing a dangerous weapon. Dkt. 15-2. Moreover, the Court must consider the nature of his crimes, which involved the pre-planned armed robbery of a credit union and the robbery of a firearms dealer to obtain weapons for future robberies. Dkt. 15-3 at ¶¶ 4-7. Under these circumstances, the Court cannot conclude that Mr. Goetz presents no danger to the community.

### III. Conclusion

Mr. Goetz has demonstrated neither extraordinary and compelling reasons for early release nor that he will not pose a danger to the community if released. Therefore, his motion to reduce sentence, dkt. [1], is **denied**.

**IT IS SO ORDERED.**

Date:  9/10/2020

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel